## Christ Krieger, Appellee, v. Aurora, Elgin & Chicago Railroad Company, Appellant.

### Gen. No. 5,067.

1. INSTRUCTIONS—*when peremptory properly denied.* A peremptory instruction is properly denied if the evidence is conflicting and there is no clear preponderance either way.

2. INSTRUCTIONS—*when inaccuracy as to exercise of ordinary care cured.* An instruction if subject to the criticism that it limits the exercise of ordinary care to the precise time of the accident, may be cured by other instructions contained in the series which require the exercise of ordinary care both before and at the time of the injury.

3. INSTRUCTIONS—*when upon question of negligence properly refused.* An instruction which directs attention to particular acts as showing or tending to show the exercise of care, is properly refused.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 24, 1909. Rehearing denied April 21, 1909.

HOPKINS, PEFFERS & HOPKINS, for appellant.

BOTSFORD, WAYNE & BOTSFORD and FISHER & MANN, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is a suit in case brought by Christ Krieger, appellee, against the Aurora, Elgin & Chicago R. R. Co., appellant, to recover for personal injuries sustained by appellee on November 21, 1904. There was a verdict and a judgment for $3,500 and the defendant appeals.

The appellant operates a third rail electric railroad in Kane county. The declaration charges the appellant with carelessly and improperly managing a motor car and alleges due care on the part of appellee. The appellant assigns for and contends there was error in

the refusal of the trial court to direct a verdict of not guilty and in the giving of the first instruction given at the request of the plaintiff and in the refusal to give an instruction asked by the defendant. The evidence shows that the accident occurred at the Clintonville sub-station of appellant. At that place the track of appellant runs north and south. A public highway sixty-six feet wide running east and west crosses the track. On the west side of the main track and south of the public highway is the power house and sub-station of appellant which is a building thirty-six feet east and west by fifty-seven feet north and south. This building is located fifteen feet west of the track and sixty-three feet south of the public highway.

The evidence also shows that there was a high embankment of gravel on the right of way south of the highway and on the west side of the track, extending from the highway south in the neighborhood of between six hundred to one thousand feet. This bank with the power house prevents travellers coming from the west on the highway seeing trains coming from the south except for a space of about twenty feet just south of the power house where there is a break in the gravel bank. The evidence is conflicting as to whether the top of a car could be seen over this embankment or not but a car could be seen passing this open space of twenty feet south of the power house. On the day of the accident and for two days prior thereto the appellee, whose occupation was that of a teamster, with two other teamsters was hauling stone from a quarry in South Elgin over this crossing to the city of Elgin. The accident occurred about twelve o'clock, noon, and he had a load of over 4,000 pounds of stone on his wagon.

Andrew Anderson, one of his fellow teamsters, was driving a team with a load coming from the west. The appellee with his team and wagon was driving behind Anderson. The evidence is conflicting as to the distance between the Anderson wagon and the appel-

lee's horses; some of the witnesses say there was a
space of eight feet and others fifteen to thirty feet
between the Anderson wagon and appellee's horses.
The other teamster was behind appellee. As Ander-
son was crossing the tracks he saw a car coming. Ap-
pellee testified that as they came to the crossing he
looked both ways and did not see anything or hear
anything whistle. The proof is that a train approach-
ing from the south cannot be seen by a person driv-
ing a team from the west until the person gets within
fifteen feet of the west rail of the track. Appellee
also testified that he had to get so close to the track
that the horses' forefeet would be on the track before
he could see down the track south; while appellant's
testimony is that a teamster could see down the track
eighteen feet from the rails.

Appellee testified that he looked and listened after
he got to the gravel bank before he got on the track,
and that he did not see or hear anything, and just as
his horses were on the track he saw the car coming
down grade; that he whipped his horses, but the car
came so fast that it hit his hind wheel; that Anderson,
the forward teamster, held his whip up and made a
signal to him, but appellee was on the track then; that
appellant gave no warning of any kind; that the car
was running "just like lightning", "sixty miles an
hour". The other teamsters testified to the great
speed of the car and that they heard no whistle or
gong, and the forward teamster said he did not see
the car until he was on the track and appellee was
ten or twelve feet behind him. On the other hand
there was proof on behalf of appellant that the whistle
was blown, and that the first teamster and appellee
whipped their horses to get across. The motorneer
of appellant testified that he blew the whistle for a
road crossing half a mile south of the Clintonville
crossing, and then he blew a station whistle and blew
for the Clintonville crossing; that when he was half
way between the two crossings he saw the first stone

wagon crossing the track and as he saw the first team drive on the track he blew the danger whistle and applied the air; and when he saw that it was going to get over he released the air; and then he saw the other team and he again blew the danger whistle and applied the air and reversed the current, and about that time he struck the wagon, after which the car ran about three hundred feet and then jumped the track and stopped.

It is apparent from the evidence of the motorneer that this is a very dangerous crossing for travelers coming from the west, with trains approaching from the south, because of the power house and the gravel bank which are close to the track and the bank extends to the public highway. The motorneer did not see the second team until the first team was across or he would not have released the air, and the teams were close together. If this car, in a place where it was concealed from the sight of appellee, was run at between sixty and seventy miles an hour as some of the evidence tends to show, the question of whether it was carelessly and improperly driven and managed was a proper question to be submitted to the jury. The proof is that these teamsters all looked and listened as they approached the track and none of them heard or saw anything to advise them of the approach of the car, and we cannot say that they were not in the exercise of ordinary care. With the heavy loads they had, their teams would move very slowly and there apparently was no way when the horses got close to the track that they could turn out. The team being close to or on the track before a car could be seen, we cannot say that the appellee did not use ordinary care. The evidence is conflicting, with no clear preponderance either way, and we think the questions of fact were properly left to the jury and that there was no error in refusing the peremptory instruction.

The instruction given for appellee which appellant

insists is erroneous, is: "The court instructs the jury that if you believe from a preponderance of the evidence that plaintiff has proved his case, as laid in his declaration, then you will find the issues for the plaintiff." The contention of appellant is that in order to sustain a recovery the appellee must aver and prove that he was in the exercise of ordinary care at and before the time of the injury. The averment of the declaration is that while the "plaintiff with all due care and caution was then riding across the said railroad" etc. It is insisted that riding across the railroad limits the time to the particular moment when he was on the track.

Several instructions given both on the part of appellant and appellee specifically told the jury that before they could find appellant guilty they must believe from a preponderance of the evidence that the appellee at and before the time of the injury was in the exercise of ordinary care. There was also an instruction given to the jury that the instructions "constitute one connected body and series and should be so regarded and treated by the jury," and that they should not detach or separate any instruction from the others. This latter instruction, in telling the jury that the first instruction should be considered together with the others, overcomes the criticism of appellant, if it was liable to such criticism. This instruction complained of, however, has been approved in a number of cases. Mt. Olive Coal Co. v. Radmacher, 190 Ill. 538; Chicago & Joliet Ry. Co. v. Patton, 219 Ill. 214; Fraternal Army v. Evans, 215 Ill. 629. There was no error in giving the instruction. The only other instruction concerning which any question is made is an instruction offered by appellant which was refused. The instruction told the jury that if they believed that the plaintiff suddenly and unexpectedly drove upon the track before the moving car, and that the servants of the defendant in charge of such car did all that could be done in the exercise of ordinary care at and

before the time of the injury to avoid the collision, then the plaintiff could not recover.

This instruction was properly refused, as it pretended to recite the facts which the jury might find, and made no reference to the unusual and dangerous rate of speed on a down grade, or to the question of warning signals which were matters in controversy. The instruction was objectionable in that it particularly directed the attention of the jury to particular acts of the employes of appellant. The proposition of law in the refused instruction was equivalent to saying that if the appellant was not guilty of negligence the appellee cannot recover, and that proposition was given in no less than four other instructions given at the request of appellant. There was no error in refusing this instruction. These are the only errors assigned which have been presented for our consideration. There is no error and the judgment is affirmed.

*Affirmed.*