THE MT. OLIVE AND STAUNTON COAL COMPANY

*v.*

ELIZA RADEMACHER.

*Opinion filed June 19, 1901.*

1. EVIDENCE—*when testimony that there were no props at bottom of shaft is proper.* In an action under the statute for failure of a mine owner to keep props on hand, witnesses who have testified that when there were props on hand they were kept at the bottom of the shaft, may testify whether at the time of the accident there were any props at the bottom of the shaft.

2. INSTRUCTIONS—*when an instruction as to right of recovery is not objectionable.* An instruction telling the jury that if they believe, from the evidence, that the plaintiff has proved her case as laid in the declaration, or either count thereof, then they shall find the issues for the plaintiff, is unobjectionable.

3. SAME—*instruction expressed in language of statute is not erroneous.* In an action against a mine owner for failing to keep props on hand, an instruction expressed in the language of the statute creating such duty is not erroneous.

4. SAME—*instruction need not negative mere matter of defense.* The plaintiff, in his instructions, is only obliged to correctly present the law applicable to his theory of the case, and is not bound, in every instruction, to anticipate and negative each defense.

*Mt. Olive, etc. Coal Co.* v. *Rademacher,* 92 Ill. App. 442, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is an action of trespass on the case, begun on May 11, 1899, in the circuit court of Macoupin county by the appellee, as widow of John Rademacher, deceased, against the appellant to recover damages for the death of her husband, caused by the falling of slate from the roof of a coal mine entry in appellant's mine, while the deceased was working therein. The trial in the circuit court before the court and a jury resulted in a judgment of $3000.00 in favor of appellee against appellant. An appeal was taken to the Appellate Court, and the Appel-

late Court has affirmed the judgment so rendered.   The present appeal is prosecuted from such judgment of affirmance.

The negligence charged against appellant was failure to supply timbers for props, whereby the roof of the entry, which the deceased, John Rademacher, and one Henry Herbeck and his son, William Herbeck, were "driving," fell upon said Rademacher, and killed him.   On the morning of July 15, 1898, while said three men were engaged in loading coal, which had been "shot" the evening before, a large piece of slate became detached from the roof and fell, instantly killing Rademacher.

The statutory provisions, upon which this action is based, are found in sections 14 and 16 of "An act providing for the health and safety of persons employed in coal mines," approved May 28, 1879, in force July 1, 1879, as amended in 1887.   Said section 16 is as follows:   "The owner, agent or operator of every coal mine shall keep a supply of timber constantly on hand of sufficient length and dimensions to be used as props and cap-pieces, and shall deliver the same as required, with the miner's empty car, so that the workmen may at all times be able to properly secure said workings for their own safety." Said section 14 is as follows:   "For any injury to person or property occasioned by any willful violations of this act or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation or willful failure, as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons, who were before such loss of life dependent for support on the person or persons so killed, for a like recovery of damages for the injury sustained by reason of such loss of life or lives; not to exceed the sum of $5000.00." (2 Starr & Cur. Ann. Stat.—2d ed.—pp. 2728, 2730).

The declaration consists of two counts, the first charging that it was the duty of the appellant to keep a supply of timber as required by said section 16, and that it neglected its duty by failing to have on hand such supply of timber, in consequence of which, while Rademacher was engaged in opening the said entry and using due care and caution for his own safety, a portion of the roof became detached and fell upon him with great force and killed him; also that he left surviving him the plaintiff, his widow, and five minor children, all of whom were dependent upon him for support. The second count alleges, in addition to the statutory duty and the violation thereof, as stated in the first count, the common law duty of the appellant to furnish the deceased a reasonably safe place in which to labor, and safe appliances with which to perform the duties which he was directed to perform, and the violation of this common law duty; also, that the said Rademacher, on the day of the accident and on other days before that time, required of the defendant props for the purpose of securing the roof of the room where he was engaged in mining coal, and demanded of appellant's mine manager, and of the empty car driver, props to be used for that purpose; but that appellant willfully failed to keep the said props at the bottom of the shaft, and willfully failed and refused to deliver the same to the deceased by the miner's empty car, or otherwise.

Among the instructions given for the appellee by the court below were instructions numbered 2 and 3. Instruction numbered 2 is as follows:

"The court instructs the jury that, if you believe from the evidence that the plaintiff has proved her case as laid in her declaration, or either count thereof, then you will find the issues for the plaintiff."

Instruction numbered 3 is as follows:

"The court instructs the jury that the law makes it the duty of the owner, agent or operator of every coal mine to keep a supply of timber constantly on hand of

sufficient lengths and dimensions to be used as props and cap-pieces, and to deliver the same as required with the miner's empty car, so that the workmen may at all times be able to properly secure said workings for their own safety, and if such operator fails willfully so to do, and by reason of such failure a person employed about the mine is killed, the owner or operator is liable to the widow of the person killed for damages not to exceed the sum of $5000.00."

CHARLES W. THOMAS, for appellant.

LANE & COOPER, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—Appellant claims that the trial court committed an error in permitting the appellee to prove that there were no props at the bottom of the mine.   Several questions were asked of several witnesses by the appellee, requiring them to state whether or not there were any props at the bottom of the shaft at a certain time.   These questions were objected to by counsel for the appellant upon the ground that the statute does not require props to be kept at any particular place; but the objections thus made were overruled, and the witnesses were allowed to answer, and the appellant excepted.   There was no error in this ruling of the court.

The witnesses had stated that, when there were props on hand, they were kept at the bottom of the shaft, where the cages stopped when they came down into the mine. In view of this testimony there was no objection to asking the witnesses, whether there were any props at that particular place, where the props were usually kept when they were on hand.   The second count of the declaration alleges, that the appellant willfully failed to keep the props at the bottom of the shaft, but the declaration

was not demurred to, and hence the question whether the props were or were not at the bottom of the shaft was one of the questions put in issue by the pleadings. There was, however, proof tending to show that there were no props on hand at all for use by the miners, either above outside of the mine, or below inside at the bottom of the shaft, or elsewhere. The evidence thus admitted tended to show the absence of props, which the statute required the appellant to have on hand, and, therefore, there was no error in its admission.

*Second*—Appellant claims that instructions Nos. 2 and 3, given for appellee upon the trial below, were erroneous upon the alleged grounds that they ignored a certain defense set up by appellant, and were inconsistent with instructions given by the court below for appellant.

An instruction, which tells the jury that, if they believe from the evidence that the plaintiff has proved his or her case as laid in his or her declaration, or in either count thereof, then they will find the issues for the plaintiff, has been held by this court to be unobjectionable in a number of cases. (*Pennsylvania Co.* v. *Marshall*, 119 Ill. 399; *Chicago City Railway Co.* v. *Hastings*, 136 id. 251; *Ohio and Mississippi Railway Co.* v. *Porter*, 92 id. 437; *Race* v. *Oldridge*, 90 id. 250; *Logg* v. *People*, 92 id. 598).

As to instruction No. 3, which was given for the appellee, a similar instruction thereto was held to be good in *Catlett* v. *Young*, 143 Ill. 74. The instruction in the case of *Catlett* v. *Young*, *supra*, was as follows: "The law makes it the duty of every operator and owner of a coal mine to securely fence the top of the shaft by gates properly protecting the shaft and the entry thereto, and if such operator fails willfully to so fence the shaft, and by reason of such failure a person employed about the mine is killed, the owner or operator is liable to the widow of the person so killed for damages, not to exceed the sum of $5000.00." If this instruction is good, as it was there held to be, then we see no reason why the instruction

numbered 3 in the case at bar is not also good.   More-over, instruction numbered 3, given for the appellee in the present case, is expressed in the language of the stat-ute itself, and for that reason is not erroneous.   Where an instruction is given in the language of the statute, it must be regarded as sufficient, because laying down the law in the words of the law itself ought not to be pro-nounced to be error.   (*Town of Fox* v. *Town of Kendall*, 97 Ill. 79; *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty*, 67 id. 113; *Race* v. *Oldridge, supra; Duncan* v. *People*, 134 Ill. 110).

The defense which, as it is claimed by counsel for ap-pellant, the two instructions, so given for the appellee, ignored, is based upon a contract alleged by the appel-lant to have been made between it and the deceased, John Rademacher.   It is said that, by the terms of this supposed contract, John Rademacher agreed for extra wages to take down the overhanging slate and thereby dispense with the necessity of props.   Counsel for appel-lant says in his brief: "In the case at bar it was contended that it was necessary for the safety of employees and the proper working of appellant's mine, to take down the slate from the roof of the entry, in which Rademacher was working, and that he and Herbeck had been paid for so doing a certain price previously agreed upon; and that the statute, which provides that props shall be kept on hand and furnished to miners, to enable them to prop and secure their working places, had no application."

Whether or not such a contract was made was a ques-tion of fact for the jury.   The evidence was conflicting as to the existence of any such contract, the evidence on the part of appellee tending to show that there was no such contract, and the testimony of appellant's pit-boss tending to show that there was such a contract. At the request of the appellant a special interrogatory was submitted to the jury requiring them to return, with their general verdict, an answer to the following ques-

tion: "Was Rademacher employed to take down the slate which injured him?" And to that special interrogatory the jury returned as their answer "No." There was, therefore, a special finding by the jury that no such contract was made. It is difficult to see how the appellant could have been injured by the omission of a reference to the defense, based upon such a contract, in the instructions in question.

The instructions, however, were not erroneous by reason of the fact that they contained no reference to the defense insisted upon by appellant. The plaintiff is only obliged to present the law correctly in his instructions applicable to his theory of the case, and is not bound in every instruction to anticipate and exclude every possible defense. (*Mitchell* v. *Milholland,* 106 Ill. 175; *Logg* v. *People, supra; Judy* v. *Sterrett;* 153 Ill. 94; *Sheridan* v. *Hibbard,* 119 id. 307). It is not necessary in an instruction to negative matter of mere defense. (*Underwood* v. *Wolf,* 131 Ill. 425). Several instructions were given for the appellant by the court below, which presented to the jury the defense set up by the appellant as based upon the alleged contract. Whether these instructions were correct or not, they gave the appellant the benefit of its alleged defense before the jury. In the recent case, however, of *Mt. Olive and Staunton Coal Co.* v. *Herbeck,* (*ante,* p. 39,) an instruction, similar to instruction numbered 3, was held to be good, and to be unaffected, as to its correctness, by the alleged agreement, if any such agreement existed. When all the instructions are read together as one charge, they present no inconsistency, which could have had the effect of misleading the jury.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*