Cyrena P. Munns, Appellee, v. Chicago City Railway Company, Chicago Railways Company, Calumet & South Chicago Railway Company, Southern Street Railway Company and Charles N. Thomas, Appellants.

## Gen. No. 29,270.

1. MUNICIPAL CORPORATIONS—*validity of ordinance requiring street cars to stop at boulevards.* An ordinance of the City of Chicago providing that no person or corporation shall operate any street car across any boulevard which "has not been brought to a full stop at the near side of such boulevard before reaching the same," is void.

2. MUNICIPAL CORPORATIONS—*reasonableness of ordinance limiting speed of street cars at boulevard crossings.* An ordinance of the City of Chicago limiting the speed of street cars to four miles an hour when crossing a boulevard is not unreasonable.

3. APPEAL AND ERROR—*right to complain of instructions given by coparty.* One defendant may complain of prejudicial errors in instructions which are given at the request of his codefendant.

4. STREET RAILWAYS—*error of instructions assuming violation of ordinance constitutes negligence.* In an action for damages growing out of a collision between an automobile and a street car, instructions which erroneously imply that any failure of the employees operating the street car to observe certain ordinances relative to crossing boulevards constitutes negligence, instead of being merely *prima facie* evidence of negligence, are erroneous.

5. STREET RAILWAYS—*when instructions as to negligence in crossing accident erroneous.* Instructions given in an action for damages resulting from a collision between a street car and an automobile at a boulevard crossing making failure of the employees driving the street car to observe certain ordinances negligence are erroneous where there is nothing in the evidence to indicate that the driver of the automobile knew about such failure or that such driver did in fact presume to any extent that the ordinances would be observed or that he regulated his conduct in any degree by such presumption or was misled in any way or induced to act in any manner by anything done or omitted by the driver of the street car.

6. STREET RAILWAYS—*inapplicable instructions as to violations of ordinance by motorman as error.* In an action for damages growing out of a collision between a street car and an automobile, instructions as to alleged violations of ordinances by the

motorman were erroneous where there was no possible relation between the hypothetically stated violations and the accident in question.

7. STREET RAILWAYS—*propriety of instruction as to right of way at crossing as between street car and automobile.* In an action for damages resulting from a collision between a street car and an automobile at a boulevard crossing where the undisputed evidence shows that the street car was half way across the boulevard when the automobile was at least 100 feet from the intersection, it was error to instruct the jury that the street car company had no superior right of way in crossing the boulevard, section 33 of the Motor Vehicle Act, Cahill's Ill. St. ch. 95a, ¶ 34, having no application to such a situation.

8. STREET RAILWAYS—*duty of motorman to anticipate negligence by other street users.* A motorman of a street car which has reached and is at least half way across a boulevard is not required to anticipate that the driver of an automobile which is at least 100 feet away might carelessly fail to see that the street car is directly ahead of him in the intersection or might heedlessly disregard that fact, it being the duty of the driver of the automobile to have it under control so that it could be stopped, if necessary, as soon as he saw, or in the exercise of reasonable care should have seen, that the street car had first reached the intersection and was crossing it directly in front of him.

9. APPEAL AND ERROR—*refusal to consider unnecessary questions.* When, because of errors, a case must be remanded for a new trial, the court will refrain from expressing an opinion on the contention that the verdict is manifestly against the weight of the evidence.

Appeal by defendants from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1924. Reversed and remanded. Opinion filed December 16, 1924.

BROWN, FOX & BLUMBERG, C. E. HECKLER and C. W. LAMBORN, for appellants; JOHN R. GUILLIAMS, CHARLES LEROY BROWN, FRANKLIN B. HUSSEY and FRANK L. KRIETE, of counsel.

JAMES C. McSHANE, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

This appeal is from a judgment against appellants

and one Charles N. Thomas for damages for personal injuries sustained by the plaintiff in a collision between one of appellants' street cars and an automobile in which plaintiff was riding and which was owned and driven by the defendant Thomas.

As we have reached the conclusion that a new trial should have been granted because of reversible errors in the instructions, we refrain from discussing the facts further than may be necessary to show, briefly, the reasons for our conclusion.

The accident happened on August 27, 1921, about two o'clock in the morning, at the intersection of Michigan avenue and Twenty-second street, Chicago, the former running north and south and the latter east and west. Michigan avenue is a boulevard under the jurisdiction of the South Park Commissioners. Both Michigan avenue and Twenty-second street are closely built-up business streets. The former is 80 feet wide, with a roadway 50 feet in width, in the center of which, at the north and south building lines of Twenty-second street, are safety islands with lights upon them. Twenty-second street is 66 feet wide, with a roadway of 40 feet, in the center of which appellants' street railway tracks are laid. A second or two before the collision, the street car, which was a double-truck car, 48 feet long, weighing 26 tons, was going east across Michigan avenue, and the automobile, a powerful five-passenger touring car, weighing about 4,000 pounds, was approaching the intersection from the south. Thomas and his wife were seated in the front seat of the automobile and plaintiff and her husband were in the rear. They had been having a late supper at the house of a friend on Michigan avenue near Twenty-eighth street, and Thomas was driving them home in his automobile, going north on Michigan avenue. The collision occurred at a point about 15 feet east of the center line of Michigan boulevard.

The testimony as to what transpired immediately

before the collision is very conflicting. There is some evidence tending to prove that the street car did not stop before entering the boulevard, but ran across it at a speed of from six to ten miles an hour and ran into the side of the passing automobile. On the other hand, the greater number of witnesses testified that the street car stopped on the west side of Michigan avenue, took on and let off passengers, started again and was crossing the eastern half of the boulevard driveway at a speed not exceeding four miles an hour, when the Thomas automobile, driven at a very high speed, crashed into the southeast corner of the street car, breaking the glass and a panel in the vestibule door. The motorman, called as a witness by the plaintiff, testified that as he started from the west building line of the boulevard, he saw the lights of an automobile four or five hundred feet to the south; that he then looked ahead and to the north but did not look to the south again until he was about opposite the safety islands in the center of the boulevard, when he saw "headlights coming * * * over 200 feet down the street"; that he watched these lights and when it appeared to him there was likely to be a collision, he stopped his car and it was not moving at the time of the collision.

Two ordinances of the South Park Commissioners were admitted in evidence. One of them provides that no person or corporation shall operate any street car across any boulevard "which car has not been brought to a full stop at the near side of such boulevard and before reaching the same." The other provides that no person or corporation shall operate any street car across any boulevard at a greater rate of speed than four miles an hour. It is earnestly contended by counsel for the railway companies that both these ordinances are void. We are inclined to agree with this contention so far as the ordinance first-above mentioned is concerned, for the reasons

stated in *Elie v. Adams Exp. Co.*, 300 Ill. 340. We are unable to agree with appellants' counsel that the other ordinance, limiting the speed of street cars to four miles an hour when crossing a boulevard, is unreasonable, or is void for any other reason stated by counsel.

Each of these ordinances was made the subject of an instruction. The sixty-sixth given instruction recites the ordinance requiring street cars. to stop at the near side of the boulevard; states that said ordinance "made it the duty" of the defendant street railway companies to bring "their street car" to a full stop before crossing the boulevard; that the defendant Thomas *"had a right to presume, to the extent that an ordinarily prudent man would do so under the same or similar circumstances, that said ordinance would be observed"*; and that if the jury believe from the evidence that the street car in question was not brought to a full stop at the west line of Michigan boulevard and that its failure "so to stop" was a proximate cause of the accident in question, "then in determining whether the defendant Thomas was exercising ordinary care in the operation of his automobile at and just before the collision in question, you may take into consideration the right of said Thomas to presume that said street car would be brought to a full stop at the west line of the boulevard." The sixty-seventh instruction follows the same general form with reference to the other ordinance forbidding street cars from being operated across any boulevard at a greater rate of speed than four miles an hour and contains the same clause italicized above.

Although these instructions were not offered by the plaintiff, but were offered by the defendant Thomas, it is now settled in this State that one defendant may complain of prejudicial errors in instructions which are given at the request of his codefendant. (*Mac-*

*Donald v. Chicago Rys. Co.*, 286 Ill. 239.) Aside from the fact that these instructions erroneously imply that any failure to comply with the "duty" alleged to be imposed by such ordinances is negligence, instead of being merely prima facie evidence of negligence (*Johnson v. Pendergast*, 308 Ill. 255), both of them are erroneous for the sufficient reason that there is no evidence in the record tending to prove that Thomas knew anything about the failure of the street car driver to observe the ordinances, if there was any such failure, or that Thomas did in fact "presume," to any extent whatever, that such ordinances "would be observed," or that he regulated his conduct in any degree by any such presumption, or was misled in any way or induced to act in any manner by anything done or omitted by the driver of the street car. Thomas' own testimony is conclusive evidence to the contrary. He testified that he did not see or hear anything of the street car until his automobile was opposite the light post at the south side of Twenty-second street, and that he then "saw it was going to be impossible to avoid a collision" unless he could turn east on Twenty-second street, which he unsuccessfully tried to do. It is true that he also testified that when he was about 100 feet from the intersection, he looked ahead and saw nothing in or near the intersection, and that he then shifted his gears and "slowed down" to about twenty miles an hour. But such actions on his part were certainly not prompted by any reliance of his on any presumption that an unseen street car would *observe* the park ordinances. They tend rather to prove that if he knew of the existence of such ordinances, he anticipated, or feared, that any street car which might be approaching on Twenty-second street would *not* observe the ordinances. It is elementary that it is error to give an instruction which is not founded on the evidence or which assumes the existence of facts that are not proved.

These instructions are bad for the further reason that, under the evidence, there was no possible relation of cause and effect between the hypothetically stated violations of the park ordinances and the accident in question. Whether, after Thomas saw the street car, it was moving at the rate of four miles an hour, or ten, or whether the street car had or had not made a full stop at the west side of the boulevard, had nothing whatever to do with causing the collision. Both instructions should have been refused.

We are also of the opinion that other given instructions were erroneous, particularly the thirty-sixth. The evidence shows, without dispute, that the street car was within, and at least half way across, the intersection when the Thomas car was not less than 100 feet south of it. This being true, it was clearly error to tell the jury by that instruction that the street car company "had no superior right of way" in crossing the boulevard. Section 33 of the Motor Vehicle Act [Cahill's Ill. St. ch. 95a, ¶ 34] has no application to the facts of this case (even if street cars were not expressly excepted from the provisions of that Act), for the reason that its application is necessarily limited to vehicles approaching an intersection at or about the same time (*Salmon v. Wilson*, 227 Ill. App. 286), and it was not intended thereby to give to a vehicle 100 feet away from the intersection the right of way over another vehicle already within and crossing the intersection. We are not aware of any rule, in this State at least, that would require a motorman under such circumstances to anticipate that the driver of the approaching automobile might carelessly fail to see that the street car is directly ahead of him in the intersection, or might heedlessly disregard that fact, if he saw it. Upon the undisputed evidence, it was the duty of Thomas to so operate his automobile and have it under such control that it could be stopped, if necessary, as soon as he saw, or in the exercise

of reasonable care should have seen, that the street car had first reached the intersection and was crossing it directly in front of him.

Appellants' counsel also insist that the verdict, so far as appellants are concerned, is manifestly against the weight of the evidence. But as the only result of that argument, if successful, would be to remand the cause for another trial, we refrain from expressing any opinion on this point.

For the errors indicated, the judgment of the superior court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

BARNES and GRIDLEY, JJ., concur.