Heidler Hardwood Lumber Company, Appellant, v. Wilson & Bennett Manufacturing Company, Appellee.

## Gen. No. 30,913.

1. EXAMINATION OF WITNESSES—*tests of capacity to estimate distances.* Objection to a question intended to measure a witness' capacity to estimate distances, by stating the length of the court room, should have been overruled.

2. HIGHWAYS AND STREETS—*right of way at street intersections.* Under Cahill's St. ch. 95a, ¶ 34, providing motor vehicles shall yield the right of way to those approaching from the right, it is a matter for the jury to decide whether under all the facts such was the duty of a driver who was much nearer the intersection than the one coming from the right and apparently in the exercise of his judgment had time to cross the intersection before the other reached it.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Reversed and cause remanded. Opinion filed December 29, 1926.

JOHN WM. CHAPMAN, for appellant.

ROY A. NUTT, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff Heidler Hardwood Lumber Co. brought this action against the defendant Wilson & Bennett Mfg. Co. to recover damages to one of its motor trucks, caused in a collision with a motor truck belonging to the defendant and operated by one of its servants. The issues were presented to a jury and at the close of the plaintiff's evidence the trial court instructed the jury to find the issues for the defendant. Upon that verdict, judgment was duly entered, from which the plaintiff has perfected this appeal.

The driver of the plaintiff's truck testified that he was driving east on Fourteenth Street, approaching Kostner Avenue, in the City of Chicago. His truck was a 5-ton truck 20 feet long. He was driving at about 8 miles an hour. The property at the southwest corner of Kostner Avenue and Fourteenth Street was vacant. As he approached Kostner Avenue he looked south and saw the defendant's truck, which was a much lighter truck, approaching from that direction. The defendant's truck was then about 150 feet from the intersection. The plaintiff's driver thought he had time to get over the intersection before the defendant's truck would reach it, and he kept on going. When the plaintiff's truck had reached a point where the front of it was across Kostner Avenue, the defendant's truck struck the rear of it, pushing it over against the curb on the northwest corner, causing the damages com-

Heidler Co. v. Wilson & Bennett Co., 243 Ill. App. 89.

plained of.    As the defendant's truck was coming
north in Kostner Avenue, it was being driven in about
the middle of the street.    As the plaintiff's truck pro-
ceeded across the intersection, the driver of the de-
fendant's truck apparently put on the brakes and that
vehicle skidded somewhat to the east and the front end
of it struck the rear end of the plaintiff's truck, as
above stated.

The driver of plaintiff's truck testified that when
he saw the defendant's truck approaching about 150
feet south of the intersection, the latter vehicle was
being driven 20 to 25 miles an hour.    There was about
an inch of snow on the ground and the pavements were
slippery.    At one point plaintiff's driver said he was
about 50 feet from the intersection when the defend-
ant's truck was about 150 feet from it, and at another
point this witness testified that he "was closer than
that," to the intersection when the defendant's truck
was 150 feet away.    The driver of the plaintiff's truck
was very apparently confused in giving distances in
feet in answer to the questions which were put to him.
At one point he stated that when he reached the curb
line of the intersection the defendant's truck was 25
or 30 feet away.    In view of the fact that the plaintiff's
truck, which was 20 feet long and which was being
driven at a speed of 8 miles an hour, got to a point
where the rear end of it was over in the east half of
Kostner Avenue, before the defendant's truck, going
20 to 25 miles an hour, reached a point where its front
end was in the south half of Fourteenth Street, this
last statement of the witness was clearly impossible.
Where the front end of a vehicle going north collides
with the rear end of a vehicle going east, in the south-
east quarter of the intersection, and the evidence
shows the vehicle going east was proceeding at a rate
of 8 miles an hour while the other one going north
was proceeding at a speed of 20 to 25 miles an hour,
it is certain that the vehicle going east must have come

into the intersection at a time when the vehicle approaching from the south was something over 20 to 25 feet away.

On further cross-examination, the driver of the plaintiff's truck testified that he did not stop his truck when he reached the intersection because, at that time, the defendant's truck was further away than he was and he thought he had time to proceed over the intersection and cross it before the defendant's truck reached it—"I thought I could make it across before he got to me,"—and upon being asked why he thought that, he answered that it was because "I did not have so far to cross." At one point in the testimony of this witness, on redirect examination, he was asked how far the defendant's truck was from the intersection when his truck had arrived there, in comparison with the length of the court room. Objection to this question was sustained, the court remarking that the witness had stated the distance in feet, and that "twenty feet was twenty feet" and that ended it. In our opinion, the question was proper and the witness should have been permitted to answer it. As this court had occasion to remark in *Louthan v. Chicago City Ry. Co.,* 198 Ill. App. 329, the testimony there presented showed that "estimates made by the witnesses as to the distance between the car and the wagon, when stated in feet, is exceedingly inaccurate and very unreliable." When a witness has been asked how far some other person or object was away from him when he was at a given point, and he has stated what that distance was in feet, it is always proper to test the ability of the witness to give distances in feet, by asking him to state the distance with relation to the length of the court room, for example, or to ask him how long he would say the court room was.

Section 33 of the Motor Vehicle Law (Cahill's St. ch. 95a, ¶ 34) provides that "motor vehicles traveling upon public highways shall give the right of way

to vehicles approaching along intersecting highways from the right and shall have the right of way over those approaching from the left.'' The important thing to determine, in considering the effect of this statute, is, when may a car be said to be ''approaching from the right'' within the meaning of the statute? This court has had occasion to interpret that statutory provision and apply it to facts presented in a number of cases. In *Lenartz v. Funk*, 224 Ill. App. 180, the evidence showed that a touring car, approaching an intersection from the right at a speed of 10 to 12 miles an hour, reached the intersection when a truck, approaching from the left at a higher speed was 50 feet from the intersection. The driver of the truck testified he could have stopped his truck ''in about 3 feet''—he contended he was driving slowly. He did not stop or slow down but drove ahead and the front part of the truck struck the rear part of the touring car and turned it over. The owner of the touring car was the plaintiff. The issues were submitted to a jury who found for the plaintiff. In affirming the judgment this court said that the touring car was ''approaching from the right,'' within the meaning of the statute, and so had the right of way, and it was the duty of the driver of the truck to check its speed sufficiently to permit the touring car to pass.

In *Partridge v. Eberstein*, 225 Ill. App. 209, two cars collided at an intersection and each owner sued the other. The cases were tried together and the issues were submitted to the trial court, and it was held neither could recover. The evidence showed the cars were being driven at about the same speed and one reached the intersection about 50 feet ahead of the other. In the course of its opinion in that case the court said: ''Whatever the exact distance may have been, it is apparent that plaintiff's automobile was approaching the intersection of the highways from the right and that under the statute it was the duty of the

defendant to give the right of way to plaintiff's automobile." With that statement we are unable to agree, for reasons hereinafter referred to.

In the same case the court also said that a vehicle might be said to be approaching an intersection from the right, within the meaning of the statute, and so entitled to the right of way over one approaching the intersection from the left, when the driver of the latter, in the exercise of due care, would or should see that, unless he yielded the right of way, the vehicles would or might collide. In passing on the question of whether due care was exercised by the drivers of the respective cars involved, two principal elements must be taken into consideration, namely, the relative positions of the two cars with respect to the intersection and their respective rates of speed. Usually the question of whether, in view of the relative positions of the two cars, with respect to the intersection, and their respective rates of speed, the driver of the car approaching the intersection from the left, should have seen that the cars would or might collide, unless he yielded the right of way, is one of fact for the jury to determine. Of course, like similar questions of fact, this may sometimes become one of law, but only where, in the opinion of the court, all reasonable minds would reach the same conclusion.

It would seem to be clear that the statute does not mean that the driver of a vehicle approaching an intersection must yield the right of way to one approaching the same intersection on his right, without regard to the distance that vehicle may be from the intersection when he reaches it or to the rates of speed at which the two vehicles are traveling. When the driver of a vehicle approaches an intersection and he sees another vehicle approaching from the right, at a greater distance from the intersection and at a speed such that, in the exercise of due care, he believes he will be across the intersection before the vehicle approaching

from the right reaches it, then, in our opinion, the lat-
ter car is not one "approaching from the right" within
*the meaning of the statute,* and so as to require such
driver to stop or yield the right of way.  Whether, in
exercising his judgment and going ahead, the driver
exercised due care, is, we repeat, ordinarily a question
for the jury to decide.  Such would be the situation, in
our opinion, where, as in the case at bar, the evidence
showed that the collision occurred when the car ap-
proaching from the left had reached the area beyond
the middle of the intersection and the one approaching
from the right had not then reached the middle of the
intersection and where the car coming in from the left
was struck in the rear by the front part of the car com-
ing in from the right.  In that situation, we believe it
may not be said, as a matter of law, that the driver of
the vehicle approaching from the left failed to exercise
due care in believing that the car coming in from the
right, not having reached the intersection when he did,
was sufficiently far away, that, considering the rates
of speed of the two cars, he had time to cross the
intersection before the other car reached his line of
travel.  In other words, in such a situation, we believe
that it may not be said, as a matter of law, that the
statute applied, and that the driver coming to the
intersection from the left proceeded across at his peril.
It was a question for the jury to decide on all the evi-
dence.

Other cases in which this court has had occasion to
apply this statute to various situations, and in which,
the decisions involved the question as one of fact, are
*Salmon v. Wilson,* 227 Ill. App. 286; *Zapf v. Kutten,*
229 Ill. App. 406; *Darling & Co. v. Yellow Cab Co.,* 238
Ill. App. 326; *Owitz v. Chindbloom,* 239 Ill. App. 674;
*Goldberg v. Philpott,* 240 Ill. App. 669, and *Boyda
Dairy Co. v. Walsh,* 242 Ill. App. 633.

In the *Salmon* case the defendant contended that the
trial court erred in refusing to instruct the jury that

he had the right of way, as a matter of law, under the statute, inasmuch as he was approaching the intersection from the right. The court held that in view of the circumstances disclosed by the evidence, the instruction was properly refused, saying that manifestly the statute did not intend to give one approaching an intersection from the right the right of way over one approaching from the left "regardless of the distance the approaching cars may be from the point of intersection. It does not contemplate that the right may be invoked when the car from the right is so far from the intersection at the time the car from the left enters upon it, that, with both running within the recognized limits of speed, the latter will reach the line of crossing before the former will reach the intersection   *   *   *. The statute contemplates the assertion of such right of way where cars approach the intersection at about the same time." We again express our agreement with that holding, as we did in *Darling & Co. v. Yellow Cab Co.*, 238 Ill. App. 326.

Apparently, the trial court allowed defendant's motion for a peremptory instruction in the case at bar, at the close of the plaintiff's evidence, on the authority of *McCarthy v. Fadin*, 236 Ill. App. 300. An examination of the briefs filed in that case in this court shows that the case was tried by the court without a jury. The question of the applicability of the statute to the facts was treated as one of fact. In the course of the opinion, however, the court said that the driver approaching the intersection from the left "should have observed the speed of the other car, and, if necessary, he should have slowed down or stopped or, reversed, in order that the other car might cross.   *   *   * It is obligatory upon the drivers of automobiles to observe this rule of the right of way, and if one ignores and violates this and an accident results thereby, he has been guilty of contributory negligence which bars any recovery from the other party for resulting dam-

ages." The evidence in that case showed that when the plaintiff came almost to a stop at the intersection, the car of the defendant, approaching from the right, was 125 feet away. We are unable to agree with the statements quoted above, as applied to the facts just referred to. The court there quotes from *Mathes v. Aggeler & Musser Seed Co.,* 179 Cal. 697, where the court said of a similar statute that it "positively gave to the defendant  *  *  *  the right of way at the intersection, *unless she was so far from the intersection that she would not come within the definition as a person approaching the intersection.*" Both in the \Partridge case and in the *McCarthy* case the court relies upon the case of *Brillinger v. Ogias,* 186 N. Y. App. Div. 221. A more recent decision of the court of appeals of that State is to be found in the case of *Ward v. Clark,* 232 N. Y. 195. There the court, in commenting upon the New York Traffic Law, requiring every driver approaching a street intersection, to grant the right of way at such intersection to any vehicle "approaching from his right," said: "The privilege thus conferred is not inflexible and absolute. A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started across, the cars had been equidistant, or nearly so, from the point of the collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct. That, in the circumstances of this case, is, we think, the extent of its significance. The plaintiff was not to wait until there was no other car in sight. Such a rule would be unworkable in crowded cities. He was to wait until it was reasonably safe to start. Whether he started when there was danger, was a question for the jury."

Whether the finding of the trial judge in the *McCarthy* case was against the manifest weight of the evidence, in view of all the circumstances disclosed, including the question of the rates of speed as well as relative distances, is apart from the question presented here. We are unable to agree with the statements quoted above from the *McCarthy* case, except when they are confined to such a specific situation of fact as might warrant them.

In *Spawn v. Goldberg,* 94 N. J. L. 335, a statutory provision similar to ours was involved. In that case the court said, in answer to a contention substantially to the effect that the statute gave the driver approaching the intersection from the right the right of way as a matter of law, ''as to that contention it is a sufficient answer to say that such provision was not intended to provide an exclusively hard and fast rule, applicable to all hazards and in all situations, regardless of actual conditions, and thus liberate from responsibility one who adheres to the regulation, and is otherwise reckless and indifferent to the situation of others; and so the fact that the driver of the jitney bus in which the plaintiff was riding failed to accord to the defendant the right of way as directed by the Traffic Act is not in itself a sufficient reason for a direction of a verdict for the defendant, when, as here, such fact is but one factor in the situation, which, considered as a whole, presents a jury question as to the defendant's negligence under all the circumstances. *Paulsen v. Klinge,* 92 N. J. L. 99, 104 Atl. 95; *Winch v. Johnson,* 92 N. J. L. 219, 104 Atl. 81.''

In *Erwin v. Traud,* 90 N. J. L. 289, an ordinance was involved which contained, in substance, the same provisions as are found in our statute. In passing on that ordinance the court said:

''Under the requirements of this ordinance, if the two vehicles here involved reached the intersection substantially at the same time, appellant's car should

Heidler Co. v. Wilson & Bennett Co., 243 Ill. App. 89.

have been permitted to cross first, and the claim is therefore made in his behalf that he was not negligent in assuming, without looking to see (if he did not look), that no vehicle was crossing from his left at the same time, that he was crossing, and that there should have been a nonsuit or a direction of a verdict in his favor on this ground.

"We are unable to adopt this view for two reasons:

"First. The evidence was of such a nature that it was a question of fact whether the two vehicles did reach the crossing at substantially the same time. There was evidence that appellant's car was running 'very fast,' at a 'terrible gait,' and that it struck the auto bus on the latter's side. From this the jury were justified in finding, if they did so find, that the auto bus reached the crossing first and was consequently entitled to cross first.

"Second. The fact, if it was a fact, that appellant's car was entitled to cross before the auto bus crossed, did not absolve appellant's driver from (using the language of Mr. Justice Kalisch in *Pool v. Brown,* 98 Atl. 262) his 'legal duty to use reasonable care to avoid colliding with other vehicles and persons in the public highway.' "

We concur in the reasoning adopted by the courts, in the decisions just referred to, to the effect that when a collision occurs at a highway intersection, and the evidence shows the driver of the vehicle approaching from the left failed to yield the right of way, that fact is not, in itself, sufficient reason for directing a verdict against him, as a matter of law, when, under all the evidence, such fact was but one factor in the situation, which, when considered as a whole, presents a question of fact for the determination of the jury.

For the reasons given, we are of the opinion that the motion of the defendant, for a peremptory instruction at the close of the plaintiff's case, should have been denied. The judgment of the superior court is

therefore reversed and the cause is remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

TAYLOR, P. J., and O'CONNOR, J., concur.