Annette Reese, Lee Anne Reese, a minor, by Leo Reese, her father and next friend, and June Doligala, a minor, by John Doligala, her father and next friend, Appellants, v. Marvin Buhle, Appellee.

**Gen. No. 47,060.**

First District, First Division.

December 16, 1957.

Released for publication February 10, 1958.

13

James A. Dooley, for plaintiffs-appellants.

Louis B. Simon and Edward Wolfe, of Chicago (Edward Wolfe, of counsel) for appellee.

PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by plaintiffs, Annette Reese, 27, her daughter, Lee Anne Reese, 6, and her niece, June Doligala, 10 years old, from a judgment on a verdict of not guilty in a personal injury case. On May 12, 1951, all three were injured in a collision with defendant's car while they were crossing Archer avenue within an unmarked crosswalk at the intersection of Richmond street.

Plaintiffs' case rests principally on the contention that as they were walking within a crosswalk and as defendant had lived in the neighborhood and knew he was approaching a crosswalk, it was his duty to keep a lookout for pedestrians and to yield the right of way to them, and that his failure to do so caused the accident. Defendant's theory is that as he approached the crosswalk, he was driving at a slow rate of speed when the plaintiffs suddenly emerged from between two stopped trucks and ran into his automobile without giving him a chance to avoid the accident. We will go no further into the facts because while it is argued by plaintiffs that the verdict is against the manifest weight of the evidence, it is clear there was

14

ample evidence for the jury to have decided the issue either way. Hence, it was important to instruct the jury properly on the respective theories of the case. The most important of the charges of error concerns the refusal of the trial court to give an instruction relating to the right of way. Plaintiffs say, and we agree, that this is the heart of their case.

■ It is admitted that plaintiffs were in a crosswalk and that the statute relating to right of way applied. (Ch. 95½, Par. 171, Ill. Rev. Stat. 1955.) It provides that:

"Where traffic control signals are not in place or in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be, to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection. . . ."

Plaintiffs submitted an instruction in the language of the statute, which the court refused to give. An instruction given in the language of a statute pertinent to the issues has been held proper. Goldberg v. Capitol Freight Lines, 382 Ill. 283, 294, 47 N.E.2d 67 (1943); Minnis v. Friend, 360 Ill. 328, 338, 196 N. E. 191 (1935); Selman v. Midwest Haulers, Inc., 309 Ill. App. 154, 160, 33 N.E.2d 140 (1941); Bertrand v. Adams, 344 Ill. App. 559, 562, 101 N.E.2d 841 (1951); Deming v. City of Chicago, 321 Ill. 341, 345, 151 N. E. 886 (1926); Mertens v. Southern Coal Co., 235 Ill. 540, 85 N. E. 743 (1908); Greene v. Fish Furniture Co., 272 Ill. 148, 111 N. E. 725 (1916); Mt. Olive & Staunton Coal Co. v. Rademacher, 190 Ill. 538, 542, 60 N. E. 888 (1901); Lotspiech v. Continental Illinois Nat. Bank & Trust Co., 316 Ill. App. 482, 45 N.E.2d 530 (1942).

In Goldberg v. Capitol Freight Lines, the first case before cited, an instruction was given advising the jury that on the date of the accident there was in force a statute requiring a vehicle to yield the right

15

of way to a pedestrian crossing the roadway. It was argued that the instruction was inapplicable to the facts and that it was a mere abstract statement of a proposition of law. The Supreme Court held that there was no error in the giving of this instruction. In Minnis v. Friend, supra, a third person was injured in a collision between defendant's automobile and a city fire truck. The court held that it was proper to give an instruction in the language of a statute giving the right of way "in all cases" to fire department vehicles. In some cases it has been held that instructions in the language of an act are always proper when pertinent to the issues. Deming v. City of Chicago, supra; Selman v. Midwest Haulers, Inc., supra. In the instant case the applicability of the instruction is beyond question since it is not denied that plaintiffs at the time of the accident were in the crosswalk.

██ Both plaintiffs and defendant cite Moran v. Gatz, 390 Ill. 478, 62 N.E.2d 443, in support of their position. It is of no substantial help to either side. The record in that case reveals that an instruction on right of way in the language of the statute was given and no error was charged with respect to it. The plaintiff had obtained a judgment which was reversed by the Appellate Court on the ground that plaintiff was guilty of contributory negligence as a matter of law (324 Ill. App. 45). One of the errors assigned in the Supreme Court was that the Appellate Court erred in its construction of the right of way statute. The Supreme Court held that the failure of a pedestrian to keep a constant lookout or to look again after having determined that he could safely cross ahead of the approaching traffic was not contributory negligence as a matter of law. The court also held that the right of way statute does not give a pedestrian on a crosswalk the right of way over all the vehicles on the street under any and all circumstances, and that a

16

pedestrian has no right unreasonably to intrude himself into the midst of traffic. The question was one for the jury, the court said, and we so hold in the instant case, subject of course to their being properly instructed.

■ Defendant argues that the court properly refused to give the instruction because even though a pedestrian is within a crosswalk, the right of way depends upon numerous factors such as speed and distance. Defendant cites three cases: Munns v. Chicago City Ry. Co., 235 Ill. App. 160 (1924); Heidler Hardwood Lumber Co. v. Wilson & Bennett Co., 243 Ill. App. 89 (1926); and Riddle v. Mansager, 254 Ill. App. 68 (1929). These were cases involving collisions between motor vehicles approaching intersections. There is a substantial difference between situations of that character and those involving a collision between an automobile and a pedestrian. Reviewing courts, cognizant of the pressure under which jury trials are conducted, are loath to find reversible error in the giving or refusal of an instruction unless it is of significant importance to the issue involved, and we will consider this phase of the matter.

It will be noted that the statute not only gives the pedestrian the right of way, but provides a definition. It requires the motorist to slow down or *stop, if need be.* The motorist must be prepared to stop. The legislature was cognizant of the great danger to pedestrians from motor vehicle traffic on highways. Edward C. Fisher, Associate Counsel of Northwestern University Traffic Institute, in his treatise on "Right of Way in Traffic Law Enforcement," states that traffic accident records disclose that in urban areas more than half of all traffic fatalities and injuries involve pedestrians. He says, p. 123:

"It is well known, too, that pedestrian accidents occur most frequently at intersections. These con-

17

siderations should emphasize the importance of pedestrian right of way rules and their enforcement."

Also noted by him is the disparity between the respective capacities of motorist and pedestrian to injure and

"the fact that the impact of the body of a pedestrian upon the vehicle would constitute but slight hazard to the latter, whereas the impact of the vehicle upon the body of a pedestrian is highly likely to result in serious injury or death, and the driver's comparative safety in collisions of this type. . . ."

Even prior to the enactment by the legislature of the right of way law, courts had recognized that a higher degree of alertness should be required of the driver of a motor vehicle approaching a place where pedestrians are likely to be crossing the highway. An excellent statement of the reasoning behind the evolvement of this rule is to be found in Mequet v. Algiers Mfg. Co., 147 La. 363, 367, 84 So. 904, 905 (1920) where it is said that while motor vehicles have become a very important and necessary part of the business and social life of the people and are therefore permitted to operate on the public streets, though carrying with them great danger and destruction, yet with respect to pedestrians using crosswalks they have the right to assume that motorists will observe that high degree of care imposed by the circumstances. The court said:

"No other condition is consistent with the common and necessary right to use such avenues of intercourse. The frequent occurrence of collisions and accidents argue most forcefully for a rigid enforcement of all traffic regulations intended to prevent such occurrences. Otherwise, the individual who, through choice or necessity, adopts the original mode of locomotion provided by nature, must 'take his life and limb in his own hands.' We do not mean by this that he is to be

excused for failing to use his own senses to avoid being injured; but the greater duty and care rests upon those who use these dangerous agencies carrying such great possibilities of harm."

In 1920 the Florida Supreme Court in Southern Cotton Oil Co. v. Anderson, 86 So. 629 (16 A. L. R. 255) held that the driving of an automobile is peculiarly dangerous in its operation and use on the public highways. To support its conclusion it cited statistics gathered by the National Safety Council (a national organization incorporated by Act of Congress August 13, 1953, and the recognized authority on the promotion of safety on the highways and statistics with respect thereto), showing that in 1918 deaths from automobile accidents totaled 7,525. The court quoted the National Safety Council as saying: "The automobile has become the most deadly machine in America." Since the decision of the Florida court hundreds of thousands have been killed and millions injured in automobile accidents. Was the lone Florida court wrong in holding that the automobile is a peculiarly dangerous instrument? The solicitude which the court showed for the pedestrian is sometimes sneered at as "pedestrianism," but the antonyms of pedestrianism are manslaughter and maiming. In 1956, 40,000 people were killed in traffic accidents in the United States and 1,400,000 were injured. (Accident Facts 1956 Edition National Safety Council.) Thus, although the population increase since the Florida decision is about 50 per cent, deaths from automobile accidents have increased 500 per cent. In 1956 the number of pedestrians killed was 7,950, and the number injured 125,000. The ratio of pedestrians killed to those injured was 6 per cent plus. The ratio of nonpedestrians (drivers and occupants of motor vehicles) killed to those injured was about 2¼ per cent. Thus, in automobile accidents involving pedestrians, the ratio of fatalities was two and one-half times that

19

of other · automobile accidents. Between the years 1952 and 1956, the figures revealed in a tabulation issued by the National Safety Council, May 16, 1957, show that in Detroit, Philadelphia, Baltimore, Chicago, and Cleveland an average of 62 per cent of the fatalities in automobile accidents involved pedestrians. In St. Louis, San Francisco, and Washington, D. C., the figures were higher. A marked reduction appears in the City of Los Angeles, where the figure is 45 per cent, that is, approximately 17 per cent less, which if extended throughout the country would have saved hundreds of lives. The reason for the low figure in Los Angeles, not otherwise noted for traffic safety, is attributable to the strict enforcement and interpretation of the right of way statute.

Being at the throttle of an automobile capable of high speed induces a dangerous mood. Impatience, the taking of chances otherwise unthinkable in the ordinary man, and a spirit almost contemptuous of the slow-moving pedestrian often obsesses the driver. There is also to be taken into account a social recklessness which tolerates an ever increasing potential speed for passenger cars that is fantastically and unnecessarily dangerous. The law must counter that mood and habit with a special devotion to those rules that protect the individual "who through choice or necessity adopts the original mode of locomotion provided by nature." The right of way statute is the most important of these rules, and failure to give the instruction on it was serious error.

██ The error in failing to give the right of way instruction is enhanced by the giving of an instruction known as the "sudden danger" instruction. This instruction told the jury that a person suddenly confronted with a danger is not expected to use the same care which might be used under ordinary circumstances, but only that care which an ordinarily careful

20

person, taking such danger into consideration, might use. This instruction has been held erroneous when applied to a motorist confronted by a pedestrian. Randal v. Deka, 10 Ill.App.2d 10, 22; Moore v. Daydif, 7 Ill.App.2d 534. It is inconsistent with the principle which we have here again enunciated that a motorist approaching a crosswalk must be on the alert for pedestrians.

There is merit to some of the other errors in instructions as charged by plaintiffs, but they are not of reversible character and on retrial can be readily corrected.

The judgment is reversed and the cause is remanded with directions to grant the motion for new trial and for such further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

McCORMICK and ROBSON, JJ., concur.