532 P.2d 568

**Ronald K. MILLS and Betty A. Mills, husband and wife, Plaintiffs-Respondents,**

**v.**

**HUNT BROS. CONSTRUCTION, INC., an Idaho Corporation, Defendant-Appellant.**

**No. 11618.**

Supreme Court of Idaho.

March 5, 1975.

E. L. Miller, Coeur d'Alene, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for plaintiffs-respondents.

DONALDSON, Justice.

On June 7, 1972, at 2:05 p. m. Ronald S. Mills, son of plaintiffs-respondents Ronald K. Mills and Betty A. Mills, was struck and killed by a DW–10 Cat scraper [1] owned and operated by defendant-appellant Hunt Bros. Construction, Inc.

The accident site was near the intersection of old U. S. Highway #10, east of Coeur d'Alene and Huetter Road. U. S. Highway # 10 runs east-west- and Huetter Road north-south. The defendant's vehicle operated by James Judd in the course of his employment, approached the intersection from the north going south. At that point, Huetter Road is on a down grade of approximately 6 to 7%. The deceased was bicycling west on U. S. # 10 with his mother and sister.

Judd testified that as he approached the down grade leading to the intersection he shifted down two gears.

> I started down the hill and I knew there was a stop sign at the bottom of the hill and I held my speed as long as I could, there is a lot of weight pushing and always trying to gain speed, never used the throttle, depended on the gears and brake, and I started down the hill and I applied my brakes and it slowed me down and left the brake off and I applied my brakes the second time and then just nothing, they didn't help."

He then applied the emergency brake which had enough effect to hold his speed constant at 20–25 m. p. h. Judd testified that he was faced with three options: (1) He could proceed straight ahead and collide with a Wallace-Colville semi-truck and following pickup truck traveling on U. S. Highway # 10; (2) he could turn to the left and have the probability of colliding with the visible mother and sister of the deceased boy; (3) he could turn to his right into the borrow pit along U. S. Highway # 10 with apparent safety. Unknown to him, the deceased was in the borrow pit riding ahead of his mother and sister.

The latter option was taken whereupon Ronald S. Mills was struck and killed. The parents brought an action for wrongful death of the child and received verdict and judgment in the amount of $101,567.09. Hunt Bros. Construction, Inc. perfected appeal.

The appellant assigns as error the trial court's failure to submit to the jury appellant's requested instruction # 1 bearing upon the issue of imminent peril or sudden emergency.

Testimony and evidence presented at trial conclusively establish that a brake failure occurred after the operator started down the hill toward the intersection in question. Testimony is further uncontradicted that at the time Judd made the choice of the third option presented above, he was precluded from seeing the deceased boy by a large mound of earth adjacent to the intersection.

Notwithstanding, we believe the trial court was correct in not submitting to the jury an instruction on imminent peril or sudden emergency. In Messmer v. Ker, 96 Idaho 75, 524 P.2d 536 (1974), this Court stated:

> "Also at issue is Instruction 30–A, the 'sudden emergency' instruction. Although the instruction is at times useful in cases involving complex and nearly instaneous occurrences, usually the instruction is counterproductive. When considering jury instructions it must be remembered that often a jury is deluged with numerous instructions, many of which attempt to explain complex questions of law. We must balance the possible confusion created by layer upon layer of instruction and the necessity of providing the appropriate legal theories. * * * In all but the most intricate negligence cases, the general definition of negligence sufficiently outlines the required standard of care. * * * I.R.C. P. 51(b); IDJI 215; Illinois Pattern Instructions 12.02. *See* Fawcett v. Irby,

---

I. A DW–10 Cat scraper is a rubber tired earthmoving machine which trails a scraper sometimes referred to as a "can."

*supra* [92 Idaho 48, 436 P.2d 714]; Carnation Company v. Garrett Freightlines, 95 Idaho 803, 520 P.2d 258 (1974); Reese v. Buhle, 16 Ill.App.2d 13, 147 N. E.2d 431 (1957)." (footnotes omitted) 524 P.2d at 540.

■ In the instruction in the case at bar, negligence was defined as the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do under circumstances similar to those shown by the evidence. As in *Messmer,* we believe the above general definition of negligence sufficiently outlines the required standard of care. A further instruction on sudden emergency or imminent peril would not have been appropriate.

■ Even if the facts at bar had been sufficiently intricate to warrant giving the above requested instruction, we believe the trial court was correct in its refusal, on the grounds that a sudden emergency instruction should not be given where the party claiming the emergency created or contributed to its cause. Chard v. Bowen, 91 Idaho 521, 527, 427 P.2d 568 (1967); Hackworth v. Davis, 87 Idaho 98, 108, 390 P.2d 422 (1964); Barry v. Arrow Transportation Co., 80 Idaho 447, 454, 333 P.2d 1008 (1959).

■ The record indicates that Hunt Bros. Construction, Inc. purchased the DW–10 Cat scraper in February, 1972, from the Worley Highway District. The machine was built in 1956 and was sold "as is."

Wilbur Hunt initially road-tested the machine and characterized its condition as "fair." Thereafter, two operators', Tom Pearcy and Richard LaChapelle, testified concerning its poor brakes. Pearcy complained about the lack of brakes to both Jim and Paul Hunt (officers of Hunt Bros.). He was told to take it out on the job anyway.

James Judd, the operator of the machine at the time of Ronald S. Mills' death, had not been told of the faulty brakes. He had been warned that certain cables were apt to snap and that the gooseneck supporting the "can" was weak.[2]

Subsequent to the fatal accident, a brake diaphram was removed from the DW–10. Various witnesses described it as being oily. Wilbur Hunt and Cecil Peck testified that its oily condition indicated leaky rings in an air compressor and that after a sufficient length of time, in Peck's opinion at least a month, the rubber compound in the diaphram dissolved resulting in a loss of air pressure. Such loss caused the brake system to malfunction.

From the record it is clear that lack of maintenance and failure to investigate complaints contributed to and possibly precipitated the factual situation involved in this case. As such, the sudden emergency instruction was properly refused.

The appellant also assigns as error the trial court's giving of instructions # 13, # 14, # 15 and # 16. This assignment is based upon the trial court's allegedly failing to define for the jury the course of conduct required of a reasonably prudent man under an emergency situation, as requested by appellant's instruction # 1. In view of our previous determination that the general definition of negligence sufficiently outlined the required standard of care, we reject this argument.

The appellant next assigns as error the trial court's failure to submit to the jury appellant's requested instruction # 2 bearing upon the issue of foreseeability in an emergency situation.

■ Trial court instruction # 9, defining negligence and ordinary care,[3] together with trial court instruction # 10, defining proximate cause,[4] adequately covered the

---

2. The record indicates, in the event of brake failure, that the primary means of stopping the machine was to "drop the can." Hunt's repeated warning that the gooseneck was weak, in effect, removed this option from Judd.

3. IDJI # 210.

4. IDJI # 230.

issue. Therefore, no specific instruction was necessary and the trial court properly refused to submit appellant's instruction # 2.

■ The appellant last assigns as error the trial court's submitting to the jury the issue of inexperienced operator.

Although the record indicates that James Judd had operated similar equipment in late May for a total of 13½ hours, the machine in question had only been operated by him June 6 and 7. On June 6, he had driven the DW–10 to the job site, worked it that day, worked it a half-day June 7, and was returning to the shop down the first steep highway hill ever negotiated by him with this machine when the incident occurred. As such, this Court cannot say that the trial judge abused his discretion in submitting the issue to the jury.

Judgment affirmed. Costs to respondents.

McQUADE, C. J., SHEPARD and BAKES, JJ., and SCOGGIN, D. J., concur.